■ In the Matter of the Claim of MARGARET R. CURRAN, Respondent. NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Casey, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed June 11, 1987.

In the decision on appeal, the Unemployment Insurance Appeal Board found that claimant was an employee of the State Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD) thus entitling her to unemployment insurance benefits. OMRDD contends on appeal that this finding is not supported by substantial evidence in the record. We agree.

OMRDD operates developmental centers around the State, where clients receive training and assistance. In connection with the operation of these centers, OMRDD runs family care programs whereby clients of the developmental centers are cared for in private homes, known as family care homes. The private homes are inspected and approved by OMRDD, and the private homeowner, known as a family care provider, enters into a contract with OMRDD. Pursuant to the terms of

this contract, the family care provider is entitled to 14 days of respite or vacation away from the family care home per year, with OMRDD paying the substitute, known as a respite provider, at the rate of $50 per day. Claimant served as a respite provider in the family care home operated by her sister-in-law.

In the circumstances of this case, the Board's decision must be reversed due to the absence of a finding of any contractual relationship between OMRDD and claimant. Claimant was selected and engaged as a respite provider by her sister-in-law, the family care provider. There is no finding in the Board's decision that the family care provider was an employee of OMRDD or was acting as OMRDD's agent in retaining claimant's services. Nor is there any evidence in the record upon which such a finding could be made; the particulars of the relationship between OMRDD and the family care provider were not explored at the hearing. Although OMRDD paid claimant a lump sum of $700, based upon a per diem rate of $50 fixed by OMRDD, this payment was made pursuant to the contract between OMRDD and the family care provider, not as the result of any contractual relationship between OMRDD and claimant. It is clear from the record that the family care provider and respite provider were free to negotiate both a greater rate of pay and a greater period of respite than that set by OMRDD, with the family care provider paying the difference. The 14-day and $50-per-day terms set by OMRDD were merely the maximum benefit provided by OMRDD to the family care provider pursuant to the terms of their contract.

Except for the lump-sum payment, the only contact between OMRDD and the respite provider involved OMRDD's community placement specialist. The Board found that this OMRDD employee "interviewed" claimant and generally supervised and controlled claimant in the performance of her duties as respite provider. According to the community placement specialist's testimony, the "interview" consisted of a conversation with claimant to make sure that claimant could provide the clients with transportation, that claimant knew the emergency phone numbers and that claimant was aware of the clients' medication needs. The community placement specialist testified that she discovered that claimant knew more about the clients than she did, and the rest of the "interview" was just "chatter". The community placement specialist's supervision and control over claimant consisted of providing her with a list of emergency telephone numbers, with the specialist's number at the top, and making herself available for advice.

Claimant testified that she sought advice on a couple of occasions during the respite period and that she filed an "incident report" when she took one of the clients to the hospital for treatment. It is clear from the community placement specialist's testimony that her concern was not with the actual manner in which claimant performed her duties as respite provider, but only that, in the end, the clients received adequate care (see, Matter of Ted Is Back Corp. [Roberts], 64 NY2d 725).

Even assuming that this evidence would be sufficient to support a finding of some supervision and control, the Board's decision must nevertheless be reversed. Evidence of control is a relevant consideration in determining whether a particular relationship is that of employer/employee or independent contractor (see, e.g., Matter of Rivera [State Line Delivery Serv. —Roberts], 69 NY2d 679, 682). Inherent in this principle is the concept that there must be some relationship, founded in contract, between the party alleged to be the employer and the party alleged to be the employee before an inquiry into evidence of control becomes relevant. In most cases, the existence of such a relationship is not an issue since the alleged employee performs services on behalf of and at the request of the alleged employer. In the case at bar, however, claimant was selected and retained by a third party, the family care provider, so that the family care provider could go on vacation, and the Board made no finding that in so doing the family care provider was acting as OMRDD's agent. As noted above, OMRDD's lump-sum payment to claimant was solely the result of OMRDD's contract with the family care provider, as one of the family care provider's contractual benefits. In these circumstances, the absence of a finding of a contractual relationship between OMRDD and claimant renders the Board's decision irrational.

Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this court's decision. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.